**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MICHAEL R. McMAHON, an individual; and KRYSTAL R. McMAHON, an individual,

Plaintiffs,

vs.

WESTGATE RESORTS, INC., a Florida Corporation; WESTGATE PLANET HOLLYWOOD LAS VEGAS, LLC, a Florida Limited Liability Company; DOES I-X; and ROE COMPANIES I-X, inclusive,

Defendants.

Case No.: 2:13-cv-02304-GMN-GWF

**ORDER**

Pending before the Court is Plaintiffs' Motion to Remand. (ECF No. 13.) For the reasons discussed below, the Court **GRANTS** Plaintiffs' motion and remands this case to state court.

## I. BACKGROUND

On November 18, 2013, Plaintiffs Michael R. McMahon and Krystal R. McMahon (collectively "Plaintiffs") filed a Complaint (ECF No. 1-1) in Nevada state court asserting claims of fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment against Defendants Westgate Resorts, Inc. and Westgate Planet Hollywood Las Vegas, LLC (collectively "Defendants") arising out of a timeshare agreement entered into between the parties. (Compl. ¶¶ 59-87, ECF No. 1-1.) Defendants received service of the Complaint on November 21, 2013. (Statement Regarding Removal ¶ 1, ECF No. 9.) On December 18, 2013, Defendants filed a timely Notice of Removal (ECF No. 1), seeking to remove the case to this Court on the basis of diversity jurisdiction. Defendants then filed their Statement Regarding Removal (ECF No. 9) on January 2, 2014.

On January 10, 2014, Plaintiffs filed a Motion to Remand to State Court (ECF No. 13) asserting that the parties were not diverse and that the amount in controversy did not exceed $75,000. Defendants filed a Response to the Motion to Remand (ECF No. 23) on February 3, 2014, asserting that the parties were diverse and the amount in controversy requirement had been met. On February 13, 2014, Plaintiffs filed their Reply (ECF No. 29), in which they respond to an assertion by Defendants that Plaintiffs will not stipulate to the amount in controversy by offering to stipulate that "the value of their case does not exceed $75,000.00, exclusive of attorney's fees and costs, if Defendants stipulate that jurisdiction over this matter is proper in the Eighth Judicial District Court of Nevada." (*Id.* 5:2-5.) In response to the proposed stipulation, on February 26, 2014, Defendants filed a Motion for Leave to File a Surreply (ECF No. 32), arguing that they should be allowed to present arguments relating to this new argument raised in Plaintiffs' Reply.[1]

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

[1] The Supreme Court has long discouraged reliance on post-removal stipulations and affidavits for determining the amount in controversy. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("[If] the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."). Such statements are likely to be used by plaintiffs to manipulate the amount in controversy to secure jurisdiction in the desired court and should be given little credence. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002). Therefore, the Court will not consider Plaintiffs' stipulation in determining the amount in controversy here, and Defendants' Motion for Leave to File a Surreply (ECF No. 32) in response to the stipulation is **DENIED**.

The federal removal statute provides that a defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction. 28 U.S.C. § 1441. To remove a state law civil action to federal court on the basis of diversity jurisdiction, a removing defendant must show that the parties are completely diverse and that the matter in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a).

Furthermore, "[r]emoval statutes are to be 'strictly construed' against removal jurisdiction. *Nevada v. Bank of America Corp.*, 672 F.3d 661, 667 (9th Cir. 2012) (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)). "The 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)). Federal courts must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (quoting *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)); *see also Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003) (per curiam) (noting that "[w]here it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold"). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## III. DISCUSSION

Defendants based their removal of this action solely on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). However, Defendants have failed to carry their burden of establishing that this Court has subject matter jurisdiction over this case. Although Defendants

established that the diversity of citizenship requirement is satisfied,[2] Defendants have failed to show, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

In their Complaint, Plaintiffs are seeking to rescind a timeshare agreement which obligates them to pay $12,615.00 to Defendants, of which Plaintiffs have already paid $7,859.43 toward their total obligation as well as an additional $550.96 in maintenance fees. (Compl. ¶¶ 53-55, ECF No. 1-1.) For relief, Plaintiffs seek an award of "general and special damages in excess of Ten Thousand Dollars (USD $10,000),[3] including … rescinding all contracts[,] compensatory damages[,] punitive damages[,] pre-judgment and post-judgment interest[, and] reasonable attorney's fees." (*Id.* p. 14.) Plaintiffs also request an arbitration exemption in their Complaint and state that an "[a]mount in excess of $50,000" is sought as relief. (*Id.* p. 1.)

Defendants assert in their Notice of Removal that "the value of the amount in controversy exceeds the sum of $75,000.00," and they base this assertion on Plaintiffs' statement in the Complaint that "the amount in controversy is in 'excess of $50,000'" and on Plaintiffs' unspecified requests for attorney's fees and for punitive damages, the latter of which is capped at $300,000. (Statement Regarding Removal ¶¶ 11-14, ECF No. 1); NEV. REV. STAT. § 42.005.1(b) ("[P]unitive damages … may not exceed: … (b) Three hundred thousand dollars if the amount of compensatory damages awarded to the plaintiff is less than $100,000."). In their Statement Regarding Removal, Defendants reiterate these factors and suggest that

---

[2] Plaintiffs are citizens of Texas, (Compl. ¶¶ 1-2, ECF No. 1-1) and Defendants are citizens of Florida. (*Id.* ¶¶ 3-4.) Therefore, Defendants are correct that complete diversity exists among the parties. (Notice of Removal ¶ 4, ECF No. 1); *see Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) ("Diversity jurisdiction under § 1332 requires complete diversity of citizenship, each of the plaintiffs must be a citizen of a different state than each of the defendants.").

[3] In Nevada, Plaintiffs seeking damages of more than $10,000 are limited by statute to only plead damages "in excess of $10,000" without further specification of amount. NEV. R. CIV. P. 8.

Plaintiffs' request for $10,000 plus rescission of the contract and punitive damages could potentially lead to an award over $92,615.[4] (Statement Regarding Removal ¶ 3.E, ECF No. 9.)

Defendants are correct that Plaintiffs' requests for punitive damages and attorney's fees may be taken into account when determining the amount in controversy in a case. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (noting that, among other things, any exemplary or punitive damages or attorney fees that are sought in the complaint are included in the calculation to determine the amount in controversy). However, Defendants' bare assertions that "the amount in controversy exceeds the sum of $75,000" based upon the compensatory and punitive damages pled in the Complaint is insufficient to establish federal jurisdiction. *See Matheson*, 319 F.3d at 1091 (finding that a request in the complaint for an award "'in excess' of $10,000 for economic loss, 'in excess' of $10,000 for emotional distress, and 'in excess' of $10,000 for punitive damages" is insufficient to show an amount in controversy of over $75,000).

The record suggests that there is at least a serious question about whether more than $75,000 is in controversy here. Though Plaintiffs plead "general and special damages in excess of Ten Thousand Dollars," the actual damages amount sought by Plaintiffs on the face of the Complaint is $13,165.96.[5] *See generally* (Compl., ECF No. 1-1.) Therefore, in order for the

---

[4] Defendants' calculation is based on adding $70,000 in punitive damages to the compensatory damages. (Statement Regarding Removal ¶ 3.E, ECF No. 9) In support of their punitive damage amount, Defendants cite to a Missouri case from 1999 involving misrepresentation in selling timeshares where the plaintiffs were awarded $70,000 after receiving $2,945 in actual damages. (*Id.*) (citing *Pruitt, v. Bailey & Associates Inc.*, XIV JVRS 32-10, 1999 WL 33591198 (Mo. Cir.) (Verdict and Settlement Summary). Defendants' calculation also relies on erroneously combining the value of the contract ($12,615) with the request for damages in excess of $10,000; however, these amounts are duplicative because the very compensatory damages sought by Plaintiffs which are in excess of $10,000 are the recession of the contract and the return of payments already made under the contract. (Compl. ¶¶ 53-54 & p. 14, ECF No. 1-1); *see also* (Mot. to Remand 3:13-20, ECF No. 13) (where Plaintiffs clarify that the value of the contract is their compensatory damages amount in excess of $10,000).

[5] This amount of actual damages is found by combining Plaintiffs' payments under the contract ($7,859.43), their remaining obligations under the contract ($4,755.57), and their costs in paying the maintenance fees on the timeshare ($550.96). (Compl. ¶¶ 53-55 & p. 14, ECF No. 1-1); *see* (Mot. to Remand 3:13-20, ECF No. 13) (clarifying the composition of Plaintiffs' actual damages claims).

amount in controversy to pass the $75,000 threshold, the punitive damages and attorney's fees must exceed $61,834.04. Because it is not facially evident from the complaint whether the punitive damages and attorney's fees are enough to meet the threshold amount in controversy for federal jurisdiction, Defendants bear the burden of proving by a preponderance of the evidence that the threshold has been met. *See Matheson*, 319 F.3d at 1090-91. Defendants, however, have failed to satisfy their burden.

First, Plaintiffs' request for Exemption from Arbitration is not dispositive as to whether the amount in controversy is sufficient for federal jurisdiction. *Mack v. Wal-Mart Stores, Inc.*, 207-CV-0982-BES-RJJ, 2008 WL 394976, at *3 (D. Nev. Feb. 11, 2008). Rather, Plaintiffs' request only demonstrates that the total amount in controversy exceeds $50,000. *See Martin v. Kroger Co.*, 2:12-CV-01373-MMD, 2012 WL 5944748, at *2 (D. Nev. Nov. 27, 2012) (finding that a request for Exemption from Arbitration only indicated that the additional unspecified damages sought by plaintiff was enough to place the amount in controversy at $50,000). Defendants must provide more than conclusory assertions that the total amount in controversy sufficiently exceeds the pled amount of $50,000 to meet the jurisdictional requirement. *See Matheson*, 319 F.3d at 1090-91.

Second, neither party has indicated that attorneys' fees may be awarded in this case under the timeshare agreement or a specific statute. Nevada law allows a prevailing party to recover attorneys' fees not otherwise authorized by a specific statute or agreement in two situations: (1) "[w]hen the prevailing party has not recovered more than $20,000" or (2) when, without regard to the recovery sought, the opposing party's defense was "brought without reasonable grounds or to harass the prevailing party." NEV. REV. STAT. § 18.010. However, "for a court to consider attorneys' fees in its calculation of the amount in controversy, the defendant must provide factual support for its argument that such fees should be considered." *McCaa v. Massachusetts Mut. Life Ins. Co.*, 330 F. Supp. 2d 1143, 1150 (D. Nev. 2004).

Here, Defendants have failed to provide any evidence that attorneys' fees should be considered in this case.[6] Moreover, in seeking to remove this case, Defendants are necessarily arguing that Plaintiffs would receive more than $20,000 in damages if successful and that Defendants have reasonable grounds for defending against this suit. Therefore, because Defendants have failed to present evidence that attorneys' fees should be considered, those fees will not be included in a determination of the amount in controversy.

Finally, while punitive damages on claims under $100,000 are capped in Nevada at $300,000, this cap is a maximum amount Plaintiffs may seek and does not provide persuasive authority about the actual amount in controversy. *See Casas v. Geico Indem. Co.*, 2:13-CV-1567-JAD-CWH, 2013 WL 6284152, at *2 (D. Nev. Dec. 4, 2013) (noting that while punitive damages at the statutory cap are theoretically possible, "[the defendant's] burden is not merely to hypothesize to a threshold-satisfying recovery; as the removing party, [the defendant] must prove that a threshold-beating recovery of punitive damages is more likely than not"). To establish that the punitive damages will more likely than not exceed the amount needed to increase the amount in controversy above $75,000, Defendants must present evidence of probable punitive damages, for example, by introducing evidence of jury verdicts in analogous cases. *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004).

Here, Defendants cite only one[7] facially analogous case from Missouri to support their contention that punitive damages will more likely than not push the amount in controversy over

---

[6] Defendants' citation to *Altamirano v. Shaw Indus., Inc.*in their Notice of Removal merely supports the argument that, if attorneys' fees were appropriate, 25% of the other damages might be a reasonable estimate of those fees. (Notice of Removal p. 8 n.43, ECF No. 1) (citing *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal. June 14, 2013)).

[7] Defendants also cite a second case, *Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 798 (Ill. App. Ct. 2008), to support their contention that punitive damages will push the amount in controversy over the threshold limit. (Statement Regarding Removal ¶ 12 n.35, ECF No. 1.) In *Kirkpatrick*, the court upheld an award of $300,000 in punitive damages with an award of only nominal actual damages. *See generally Kirkpatrick*, 894 N.E.2d 781. However, Defendants fail to explain how that case is analogous to the one here, and it appears to the Court that *Kirkpatrick* is materially distinguishable from the present case. Though the court in *Kirkpatrick* upheld a large

the jurisdictional threshold. (Notice of Removal ¶ 12, ECF No. 1). In that case, plaintiffs alleging misrepresentations in the selling of a timeshare were awarded $70,000 in punitive damages and $2,945 in actual damages. *Pruitt*, XIV JVRS 32-10, 1999 WL 33591198 (Mo. Cir.) (Verdict and Settlement Summary). This one out-of-state case, however, provides little guidance about the amount of punitive damages that might be awarded here, especially when compared to other analogous out-of-state cases and similar Nevada cases awarding lower ratios of punitive damages for fraudulent misrepresentations made by sellers. *See e.g. Baker v. Chavis*, 410 S.E.2d 600, 601 (S.C. Ct. App. 1991) (in a case involving misrepresentations in the selling of a timeshare, the court affirmed the trial court's award of $25,410 in compensatory damages, $11,000 in attorney's fees, and $10,000 in punitive damages); *Amaral v. Shull*, No. 53161, 2011 WL 1022863, at *1-2 (Nev. Mar. 21, 2011) (in a case involving misrepresentations in the selling of a mobile home, the Supreme Court of Nevada affirmed the trial court's award of $152,738.39 in compensatory damages and $40,000 in punitive damages).

Furthermore, the Supreme Court of Nevada has recently recognized that under the state's current system for determining punitive damages awards, "a punitive damages award that is 'less than three times the compensatory awards' is 'well within the accepted ratios,'" but "a ratio of more than 4:1 may be 'close to the line … of constitutional impropriety.'" *Prestige of Beverly Hills, Inc. v. Weber*, No. 55837, 2012 WL 991696, at *7 (Nev. Mar. 21, 2012) (quoting *Wyeth v. Rowatt*, 126 Nev. Adv. Op. 44, 244 P.3d 765, 785 (2010) and *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 581 (1996)). As the Court has already noted, the compensatory damages amount sought by Plaintiffs is $13,165.96, and in order for the amount in controversy to pass the $75,000 threshold, the punitive damages amount must exceed

---

punitive damages award with only a small award of nominal actual damages, the court also awarded $83,000 in attorneys' fees and implied that plaintiffs would have been entitled to a larger compensatory damages award but they had failed to submit sufficient evidence to calculate the amount of their actual damages at trial. *See Kirkpatrick*, 894 N.E.2d at 796-98.

$61,834.04. *Supra* 5:15-6:2. Therefore, in order for the amount in controversy here to be over $75,000, the trial court would have to award punitive damages at a ratio of at least 4.7:1, which appears to be at the very limits of constitutional propriety. See Weber, 2012 WL 991696, at *7. Accordingly, the Court finds that Defendants here have failed to satisfy their high burden to show that it is more likely than not that such a high punitive damages ratio is applicable in this case and that, as a result, the amount in controversy exceeds $75,000.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand. (ECF No. 13) is **GRANTED**. This case is hereby remanded to the Eighth Judicial District Court. The Clerk of the Court shall remand this case back to state court and thereafter close this Court's case.

**DATED** this 24 day of July, 2014.

Gloria M. Navarro, Chief Judge
United States District Judge